UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-724-MOC

| | | |
|---|---|---|
| MARK SATTERTHWAITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 19, 21). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

### I.     Administrative History

Plaintiff filed an application for a period of disability and disability income benefits ("DIB") under Title II of the Social Security Act ("Act") on January 24, 2017, alleging disability beginning December 23, 2016. (Tr. 22). The application was denied initially and upon reconsideration. (Id.).

Plaintiff requested an administrative hearing, which was held on October 7, 2019. (Id.). On December 24, 2020. (Tr. 22–32), the administrative law judge ("ALJ") denied the application for benefits. The Appeals Council ("AC") subsequently denied review on October 26, 2020, (Tr. 1–7), making the ALJ's decision the final decision of the Commissioner.

-1-

Having exhausted his administrative remedies, Plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision. The Commissioner has answered Plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II.    Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.

> If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 23, 2016, the alleged onset of Plaintiff's disability.

-4-

(Tr. 24–25). At Step Two, the ALJ found that Plaintiff has the following severe impairments: coronary artery disease status post myocardial infractions with implantable cardioverter defibrillator and atrial fibrillation, as well as degenerative disc disease of the lumbar and cervical spine. (Tr. 25–26). At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 26); see 20 CFR 404.1520(d), 404.1525, 404.1526. The ALJ then determined Plaintiff's RFC, finding that Plaintiff can perform "light work" with certain limitations. (Tr. 26–30). At Step Four, the ALJ found that Plaintiff is capable of performing past relevant work as an automotive salesperson. (Tr. 30–32). Therefore, the ALJ ruled that Plaintiff is not "disabled" within the meaning of the Social Security Act. (Tr. 32).

## V.    Discussion

For the reasons below, the Court finds that substantial evidence supports the agency's decision, the ALJ applied the correct legal standards in reaching that decision, and Plaintiff has not shown a cognizable constitutional violation warranting relief by this Court.

Plaintiff raises two challenges to the ALJ's decision: (1) the former Commissioner's decision is constitutionally defective because his appointment violated the separation of powers clause; and (2) the ALJ's RFC is not supported by substantial evidence due to (a) psychological limitations per consultant Crump, (b) the ALJ's failure to adequately consider anticoagulation (Coumadin) therapy post- myocardial infraction, and (c) diagnosed carpal tunnel syndrome.

As discussed below, these arguments are unavailing. Plaintiff has not shown a cognizable constitutional violation, substantial evidence exists to support the ALJ's decision, and the ALJ

RFC is sufficient to deny benefits at Step 4, or alternatively, at Step 5 of the sequential evaluation. Therefore, the Court will affirm the ALJ's decision and deny Plaintiff's motion.

### A. Plaintiff has not Shown a Cognizable Constitutional Injury

Plaintiff argues that SSA's decision denying his disability benefits claim was constitutionally defective because the Social Security Act provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. The parties agree that 42 U.S.C. § 902(a) (3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. See Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op."). But without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination. As the Supreme Court explained in Collins v. Yellen, 141 S. Ct. 1761, 1787–89 (2021), even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused him harm. In a previous case applying Collins to the case of Social Security ALJs, this Court held that a plaintiff must demonstrate some nexus between the removal protection and the injury she alleges in order to present a cognizable challenge to the constitutionality of the Social Security Commissioner's for-cause removal protection. Helms v. Comm'r of Soc. Sec., No. 3:20-CV-589-MOC, 2021 WL 5710096, at *2–3 (W.D.N.C. Dec. 1, 2021). Plaintiff does not provide a convincing reason for this Court to depart from this holding.

Plaintiff cannot establish a nexus between his denial of benefits and the Commissioner of Social Security's tenure protection for two key reasons. First, the ALJ who denied Plaintiff's

claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. Rather, the ALJ had his appointment ratified by an Acting Commissioner of Social Security— whom the President could have removed from that role at will, at any time. As a factual matter, there is thus no separation-of-powers concern in Plaintiff's case. Plaintiff argues that the removal protection provision in the Social Security Act is not expressly limited to full Commissioners and could conceivably apply to Acting Commissioners. (Doc. No. 26 at 1–3). But Plaintiff cannot cite a single recent case or instance where a President was prevented from firing an Acting Commissioner. (Id.). In addition, the Court is unaware of any such case or instance. This is probably because firing an Acting Commissioner is plainly within the President's well-recognized constitutional authority to appoint and fire officers, notwithstanding Plaintiff's strained reading of the Social Security Act. United States v. Eaton, 169 U.S. 331, 343 (1898) (holding that where a "subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official").

Second, even if the deciding ALJ had been appointed by a tenure-protected Commissioner (which is not the case), Plaintiff would also need to show that Section 902(a)(3)'s removal restriction caused the denial of his benefits claim. He has not and cannot make such a showing. Under Collins, therefore, he has no entitlement to a new hearing. A variety of other legal doctrines—harmless error, de facto officer, and the rule of necessity, as well as broad prudential considerations—reinforce the clear takeaway from Collins that Plaintiff is not entitled to relief even if 42 U.S.C. § 902(a)(3) violates the separation of powers.

**1. Under Collins, Plaintiff Cannot Show the Required Nexus Between Section 902(a)(3)'s Removal Restriction and the Denial of his Benefits Claim.**

In Collins, the Supreme Court reviewed a challenge similar to this one, which alleged that the leadership structure of the Federal Housing Finance Agency was unconstitutional because its sole director was removable by the President only for cause. Though the Supreme Court found the removal provision unconstitutional, its discussion of the availability of relief disposes of Plaintiff's constitutional claim here. The Supreme Court explained that even where an unconstitutional statutory removal restriction is present, a plaintiff cannot obtain retrospective relief without showing that the "unconstitutional vision . . . inflict[ed] compensable harm." See Collins, 141 S. Ct. at 1789; see also Decker Coal Co. v. Pehringer, 8 F.4th 1123, 1137 (9th Cir. 2021) ("Collins is controlling with respect to the remedy for any unconstitutionality in the removal provisions."). In Collins, as here, the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the . . . method of appointment[.]" 141 S. Ct. at 1787. The Court emphasized that "the unlawfulness of [a] removal provision"—the alleged constitutional defect both in Collins and here—"does not strip [an official] of the power to undertake the other responsibilities of his office." Id. at 1788 n.23. "As a result," the Court held, "there is no reason to regard any of the actions taken" by the agency during this period "as void." Id. at 1787. As Justice Thomas further explained, "identifying some conflict between the Constitution and a statute is not enough. [Plaintiffs] must show that the challenged Government action at issue . . . was, in fact, unlawful." Id. at 1790 (Thomas, J., concurring). Without any showing that Section 902(a)(3)'s removal restriction "inflict[ed] compensable harm" on him, Collins, 141 S. Ct. at 1789, Plaintiff cannot obtain a rehearing on separation of powers grounds.

**i. The Deciding ALJ Served Under a Ratification of his Appointment by an Acting Commissioner Not Subject to Tenure Protection, thus Severing any Nexus Between the Removal Restriction and Plaintiff's Alleged Harm.**

Under Collins, the absence of a nexus between the purported harm and challenged removal restrictions "defeats the . . . argument for setting aside" agency action. See id. at 1787. Where, as here, the underlying basis for a separation-of-powers challenge to a removal restriction is an action taken by an Acting official who was removable at will, no such nexus can even arguably exist. Id. at 1782. The ALJ who adjudicated Plaintiff's claim on December 24, 2020, (Tr. 22–32), held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Berryhill. For her part, Commissioner Berryhill had been designated to serve as Acting Commissioner in April 2018, upon former President Trump's nomination of Andrew Saul to serve as Commissioner. In her Acting capacity, she enjoyed no statutory tenure protection. See 42 U.S.C. § 902(b)(4); Collins, 141 S. Ct. at 1783 ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain "plain language to take [that power] away."); see also Eaton, 169 U.S. at 343. Thus, Commissioner Berryhill was removable at will, and her ratification of the deciding ALJ's appointment accordingly severed any conceivable nexus between Section 902(a)(3)'s tenure protection for a confirmed Commissioner and any alleged harm to Plaintiff.

Lacking any such nexus, Plaintiff cannot receive an SSA rehearing on his benefits claim. Collins, 141 S. Ct. at 1787; see also Decker, 8 F.4th at 1138 ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground.").

**ii. Plaintiff Cannot Show that the Commissioner's Statutory Tenure Protection Affected the Deciding ALJ's Determination of his Claim.**

Even if Acting Commissioner Berryhill had been subject to a statutory removal restriction when she ratified the deciding ALJ's appointment, Plaintiff's separation of powers claim would fail for an additional fundamental reason: he cannot show that the removal restriction "inflict[ed] compensable harm" on him. Collins, 141 S. Ct. at 1789.

Plaintiff appears to argue that because the ALJ who adjudicated his claim served under authority delegated from a Commissioner who enjoyed unconstitutional removal protection, the denial of his claim ipso facto violates the separation of powers. That is incorrect: unlike Appointments Clause defects, where the presiding official does not enjoy proper authority to occupy the office, see Lucia v. SEC, 138 S. Ct. 2044 (2018), agency action is not per se invalid simply because it can be traced back to an official subject to an unconstitutional removal protection. Rather, under Collins, where an agency official is properly appointed, there can be no claim that he "exercise[d] . . . power that [he] did not lawfully possess." Collins, 141 S. Ct. at 1788; see also id. at 1788 n. 23 ("the unlawfulness of [a] removal provision does not strip [an official] of the power to undertake the other responsibilities of his office"). Thus, "there is no reason to regard any of the actions taken" by officials with tenure protection during this period "as void." Id. at 1787; see also id. at 1793 (Thomas, J., concurring) (where officials were properly appointed, there is "no barrier to them exercising power[.]"). Therefore, under Collins, actions taken by properly appointed officials are not void. The appointment of the ALJ who presided over Plaintiff's claim, which was ratified by an Acting Commissioner without tenure protection, and the Commissioner who occupied the office when the ALJ issued the decision, appointed by the President with advice and consent of the Senate, were both actions taken by

properly appointed officials and, therefore, are not void. The properly appointed ALJ had full authority to make decisions on benefits claims and the properly appointed Commissioner had full authority to carry out the responsibilities of his office, including promulgating regulations.

Relief is available in removal challenges only where the alleged injuries are caused by officials subject to the challenged removal restrictions, and where those restrictions themselves "inflict[ed] compensable harm" upon plaintiffs. Id. at 1789. Justice Kagan agreed that "plaintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—only when the President's inability to fire an agency head affected the complained-of decision." Id. at 1801 (Kagan, J., concurring). And as Justice Thomas explained in his own Collins concurrence, "identifying some conflict between the Constitution and a statute is not enough. [Plaintiffs] must show that the challenged Government action at issue . . . was, in fact, unlawful." Id. at 1790 (Thomas, J., concurring).

To obtain a rehearing on separation of powers grounds, in other words, Plaintiff must show that Section 902(a)(3)'s removal restriction somehow caused the denial of his benefits claim. Plaintiff cannot make that showing here. Were he challenging an action taken by the then Commissioner, the bar to make the required showing would be high enough: as noted in Collins, relief might be warranted had the President sought to remove the challenged official, but been prevented from doing so by a court order. Id. at 1789.

But the bar is even higher here, where Plaintiff instead asks the Court to set aside an ALJ's decision on the basis of the Commissioner's tenure protection. And that bar is beyond his reach: he cannot conceivably show how the President's supposed inability to remove the Commissioner without cause might possibly have affected any ALJ's disability benefits decision, much less the decision on Plaintiff's specific claim. Indeed, holding Plaintiff to a lower bar

would provide him an unwarranted remedial windfall. As Justice Kagan noted in her <u>Collins</u> concurrence, "[g]ranting relief" where a plaintiff could not show that the President's inability to remove an agency head actually affected the decision at issue "would, contrary to usual remedial principles, put the plaintiffs 'in a better position' than if no constitutional violation had occurred." <u>Id.</u> at 1801 (Kagan, J., concurring).

The same principle applies in this case. Under Plaintiff's theory, he should be awarded a rehearing for no reason other than Section 902(a)(3)'s existence, whether or not he can show that its restriction on the President's ability to remove the Commissioner had any effect on the ALJ's actual decision on his benefits claim. Awarding him a rehearing where he cannot show that Section 902(a)(3)'s tenure protection affected the denial of his benefits claim would leave him better off than if that provision had never existed in the first place. As Justice Kagan emphasized, established remedial principles do not permit that sort of outcome. <u>Id.</u> Were it otherwise, Plaintiff would be far from alone in pursuing the remedial windfall he seeks, as many thousands of other disappointed claimants could receive the same relief. Justice Kagan identified precisely this potential problem in explaining how the Court's holding in <u>Collins</u> will guide the remedial analysis in separation of powers challenges going forward: "[c]onsider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year . . . . given the majority's remedial analysis, I doubt the mass of SSA decisions— which would not concern the President at all—would need to be undone." <u>Id.</u> at 1802 (Kagan, J., concurring). Ultimately, the separation of powers framework, which conditions relief on a plaintiff's ability to show that an unconstitutional removal limitation actually affected the challenged decision, properly "help[s] protect agency decisions that would never have risen to the President's notice." <u>Id.</u>

**2. In the Alternative, Plaintiff's Rehearing Request is Denied Under the Harmless Error Doctrine, the De Facto Officer Doctrine, the Rule of Necessity, and Broad Prudential Considerations.**

Harmless error and other established remedial doctrines reinforce the clear takeaway from Collins that Plaintiff is not entitled to relief—unless and until he shows harmful error in the decision the ALJ issued on his claim, which he has not done.

**i. Any Constitutional Violation Constituted Harmless Error.**

The Collins rule—that an unconstitutional removal restriction must cause compensable harm to a Plaintiff to justify retrospective relief—draws further support from the related harmless error doctrine. Under the doctrine, retrospective relief is not appropriate simply because a statutory provision violates the Constitution unless the violation itself caused Plaintiff some harm. Here, because Plaintiff cannot show that the Commissioner's tenure protection had any actual effect on the ALJ decision on his claim, his request for a rehearing is denied. "[M]ost constitutional errors can be harmless." Arizona v. Fulminante, 499 U.S. 279, 306 (1991) (citation omitted); see also Rivera v. Illinois, 556 U.S. 148, 162 (2009) (finding that improper selection of a "competent and unbiased juror" is harmless error). This "harmless error" rule applies to administrative and civil adjudications as well. See Sea "B" Mining Co. v. Addison, 831 F.3d 244, 253 (4th Cir. 2016) ("Administrative adjudications are subject to the same harmless error rule that generally applies to civil cases.").

Indeed, the Court has recognized only a limited class of fundamental constitutional errors that "defy analysis by 'harmless error' standards." Fulminante, 499 U.S. at 309. That limited class encompasses errors "so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome." Neder v. United States, 527

U.S. 1, 7 (1999). Here, Plaintiff cannot plausibly contend that the constitutional violation he asserts falls into the narrow, structural category that might require automatic reversal of the ALJ's decision. In fact, Plaintiff does not even suggest that Section 902(a)(3)'s removal restriction gave rise to some "fundamental unfairness" in the ALJ hearing process that might support a structural error finding. See McCoy v. Louisiana, 138 S. Ct. 1500, 1511 (2018). As discussed above, Plaintiff cannot even show a connection between the Commissioner's tenure protection and the ALJ's denial of his disability benefits claim. Thus, any constitutional violation attributable to Section 902(a)(3) constituted at most harmless error as applied to the process that Plaintiff received from the ALJ assigned to adjudicate his claim.

### ii. Rehearing is Unwarranted Under the De Facto Officer Doctrine.

The de facto officer doctrine also defeats an award of retrospective relief to Plaintiff. This longstanding doctrine "springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." Ryder v. United States, 515 U.S. 177, 180 (1995). To serve those important interests, the doctrine "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." Id. The de facto officer doctrine rests on "considerations of policy and necessity." Norton v. Shelby Cnty., 118 U.S. 425, 441 (1886). Broadly, the doctrine safeguards "the foundations of law and order and the stability of government" by preventing the chaos that could result if a defect in an officer's appointment required the mass invalidation of the officer's past acts. See Briggs v. Voss, 85 P. 571, 572 (Kan. 1906). Likewise, it ensures that members of the public who transact business

with an officer need not "investigate his title, but may safely act upon the assumption that he is a rightful officer." See Waite v. City of Santa Cruz, 184 U.S. 302, 323 (1902). To be sure, in Ryder, the Supreme Court explained that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief—there, a new hearing before a properly appointed officer. Ryder, 515 U.S. at 182-83, 188. Here, however, the Commissioner's appointment, as well as the appointment of the presiding ALJ, were entirely proper. To hold for Plaintiff here would risk unwinding untold thousands of SSA disability determinations for no good reason, endangering the efficient and orderly adjudication of benefits by the agency and harming the interests of those whose disability claims have yet to be adjudicated—precisely the type of "chaos" the de facto officer doctrine was designed to prevent. Accord Collins, 141 S. Ct. at 1802 (Kagan, J., concurring)

### iii. Rehearing is Unwarranted Under the Rule of Necessity.

The rule of necessity provides yet another reason to deny the rehearing Plaintiff seeks. Under the rule of necessity, a judge bears the duty to exercise adjudicatory responsibility over a matter, notwithstanding some defect in his or her title or authority, where all other judges share the same defect. See, e.g., Philadelphia v. Fox, 64 Pa. 169, 185 (Pa. 1870) ("[W]herever it becomes necessary for a judge to sit even where he has an interest… where no one else can take his place—it is his duty to hear and decide"). In short, as the Ninth Circuit has put it: "[W]here all are disqualified, none are disqualified." Glick v. Edwards, 803 F.3d 505, 509–10 (9th Cir. 2015) (quotation omitted). The rule applies equally to administrative proceedings. See E. Air Lines, Inc. v. F.A.A., 772 F.2d 1508, 1512 (11th Cir. 1985) (because "no other federal agency" was authorized to decide a matter, "the 'rule of necessity' might have forced the FAA to make this decision in any case"). Applying the rule of necessity here shows that it could not have been

error for the deciding ALJ to hear Plaintiff's disability claim. If, as Plaintiff wrongly postulates, the Commissioner's tenure protection somehow filters down to affect one ALJ within SSA, it filters down to affect all such ALJs. To hold that the assigned ALJ should have declined to adjudicate Plaintiff's claim for that reason would have meant that all other SSA ALJs should have declined as well for the same reason. And such across-the-board action would have left Plaintiff without a forum to adjudicate his disability benefits claim; more than that, it would have denied him even the opportunity to qualify for benefits. The rule of necessity precludes such an absurd outcome.

### iv. Prudential Considerations Bar Plaintiff's Request for a Rehearing.

Plaintiff's request is equally untenable for prudential reasons: it would lead to pointless "do over" hearings at the expense of thousands of other claimants waiting in the queue for their own initial hearing. The law of remedies accounts for matters such as "the public interest" and "the balance of equities." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "[I]n constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." New York v. Cathedral Academy, 434 U.S. 125, 129 (1977) (citation omitted). Here, the relief Plaintiff seeks is neither necessary, fair, nor workable. While Plaintiff's benefits claim is deeply important to him, ordering the retrospective relief Plaintiff seeks without a showing of harmful decisional error would mean that other disability claimants, perhaps hundreds of thousands, would be equally entitled to their own rehearings, even though they, too, suffered no injury from the challenged removal restriction. As the Supreme Court recognized "the Social Security hearing system is 'probably the largest adjudicative agency in the western world.'" Barnhart v. Thomas, 540 U.S. 20, 28-29 (2003) (quoting Heckler v. Campbell, 461 U.S. 458, 461 n.2 (1983) (citation omitted)). Needless do-

overs would thus greatly strain a system that already conducts hundreds of thousands of hearings each year. See Soc. Sec. Admin., Annual Performance Report: Fiscal Year 2020, 39, 41 (Jan. 2021) (noting that the SSA receives more than 2 million annual disability claims, convened more than 790,000 hearings in 2019, and the annual average processing time for hearing decisions is more than a year).

Plaintiff can obtain relief if the ALJ committed harmful error in deciding his claim. But given that (as explained below) the ALJ rendered a properly-supported decision, there is no basis for Plaintiff—or the many thousands of claimants who might also seek a remand without error in their disability decision—to demand a pointless remand. More than one Supreme Court Justice has voiced precisely this concern about unwinding vast numbers of SSA benefits determinations. In her Collins concurrence, Justice Kagan explained that the majority's decision, with its rightful emphasis on a showing of harm, would correctly prevent the "mass" of SSA decisions from being "undone." 141 S. Ct. 1802 (Kagan, J., concurring). And at argument this past term for Carr v. Saul, Justice Alito similarly noted that undoing numerous SSA determinations would be an "enormous waste of time and money," and would mean that "other claimants who've never had a shot are going to have to wait." Transcript of Oral Argument at 16-17, Carr v. Saul, 141 S. Ct. 1352 (2021) (Nos. 19-1442, 20-105). Weighing the significant prudential costs of the retrospective relief Plaintiff seeks against the complete lack of harm to Plaintiff's constitutional interests, the Court holds that remand would be improper in this case.

**B. The ALJ's RFC is Supported by Substantial Evidence, Supporting a Denial at Step 4 or, in the Alternative, at Step 5**

Substantial evidence supports the ALJ's RFC. The ALJ found Plaintiff had an RFC for performing a restricted range of light work. (Tr. 26–27, Finding 5). The ALJ found Plaintiff

should never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. (Id.).

Furthermore, Plaintiff can tolerate frequent, but not constant, exposure to workplace hazards, such as unprotected heights and dangerous machinery. (Id.). The threshold for substantial supporting evidence of the ALJ's determination is low. As noted, substantial evidentiary support means "more than a mere scintilla" but somewhat less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971). Therefore, the existence of even a preponderance of contrary evidence is insufficient to defeat the ALJ's non-severity determination, which in this case is supported by more than a scintilla of evidence.

### 1. State Agency Consultants Substantially Support the ALJ's Physical RFC

In this case, the ALJ found "persuasive" the opinion of State agency medical consultant Dr. Huffman-Zechman and even "more persuasive" the opinion of Dr. E. Woods because he reviewed later medical records available on January 2, 2019. (Tr. 30).

#### i. Drs. Huffman-Zechman and Woods

On July 21, 2017, Dr. Ellen Huffman-Zechman opined that, despite sleep apnea and an ICD implant, Plaintiff would be able to perform light exertional work. (Tr. 70-72). On January 2, 2019, Dr. E. Woods opined that Plaintiff could do light work despite his post-cardiac heart attack condition. (Tr. 89). Therefore, these doctors support the ALJ's light exertional RFC. The support of SA consultants alone makes the ALJ's physical RFC supported by substantial evidence. See, e.g., Lusk v. Astrue, No. 1:11 cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence).

#### ii. Dr. Brett Fox supports ALJ's Mental RFC

-18-

On August 1, 2017, psychological consultant Dr. Brett Fox opined that Plaintiff had no severe mental impairment. (Tr. 69). Dr. Fox pointed out that the record indicates that Plaintiff's mental issues were all the result of the aftermath of his heart attack and stent surgery and that now he is feeling a lot better mentally. (Id.). Accordingly, the ALJ found that Plaintiff's alleged anxiety and depression were non-severe mental impairments. (Tr. 25). In so finding, the ALJ pointed out that at the administrative hearing Plaintiff did not allege any mental health limitations, had few mental health symptoms at Caromont Health with no significant treatment, and has not taken any mental health medications since 2018. (Id.).

### iii. Dr. Brian Wysong supports the ALJ's Mental RFC

The ALJ found as persuasive the opinion of Plaintiff's primary care physician, Dr. Brian Wysong that Plaintiff had no mental limitations. (Tr. 30). Dr. Wysong indicated that Plaintiff's depression and anxiety had been well-controlled with medication with no side effects and good prognosis. (Tr. 851). Dr. Wysong opined that Plaintiff had unlimited abilities to do unskilled work (Tr. 853). He further opined that Plaintiff would never be absent from work due to a mental impairment (Tr. 855).

### iv. Drs. Barham and Crump's Opinions

The ALJ found unpersuasive the January 2, 2019, opinion of psychological consultant Dr. Margaret Barnham (and by implication the opinion of Dr. Kathy Crump) in that Dr. Barnham restricted Plaintiff to simple instructions (Tr. 30, 93). In so opining, Dr. Barnham quoted from the much earlier October 19, 2017, psychological evaluation performed by psychologist Dr. Crump (Tr. 88). However, Dr. Crump gave this evaluation, (Tr. 491–98) at Carolina Rehabilitation during the start of a period when Plaintiff was undergoing rehabilitation from his

heart attack, having commenced such on October 19, 2017, with discharge on November 18, 2017, (Tr. 497).

Even though the ALJ did not mention Dr. Crump by name, the ALJ was aware of her opinion by reviewing the opinion of Dr. Barham. Furthermore, an ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). In addition, the ALJ alternatively denied benefits based upon unskilled jobs identified by the VE. Any alleged error in not specifically citing Dr. Crump's opinion is harmless since such jobs involve simple tasks. All three of those alternative jobs have a Reasoning Level of 2, according to the DOT. In Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019), the Fourth Circuit held that there is no apparent conflict between the DOT's definition of reasoning level two and a limitation to "simple, routine, repetitive" tasks. In so holding, the Court joined "every other circuit to consider the issue." Id. at 144 n.8 (collecting cases from the Third, Eighth, Ninth, Tenth, and Eleventh Circuits). See also Waddell v. Saul, 789 F. App'x 959, 960 (4th Cir. 2020) (unpublished) (Lawrence "forecloses" a claim that there was an apparent conflict between a limitation to simple, routine, repetitive tasks and Reasoning Level Two work).

### v. Carpal Tunnel not Functionally Relevant

Plaintiff had been diagnosed as having bilateral carpal tunnel syndrome. But the record contains no treatment for this. Furthermore, at the administrative hearing, Plaintiff never mentioned this diagnosis. In fact, records dated November 26, 2018, from Novant Health Presbyterian Medical Center note "no residual effects" after this diagnosis. (Tr. 690). A mere diagnosis does not mean that the diagnosed illness is disabling with regard to functionality. See, e.g., Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); English v. Shalala, 10 F.3d 1080 (4th Cir.

1993); <u>Kasey v. Sullivan</u>, 3 F.3d 75 (4th Cir. 1993). As noted in <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988), a "mere diagnosis ... says nothing about the severity of the condition." <u>See also</u> <u>Pendley v. Astrue</u>, 2013 WL 819337, at *5 (Mar. 6, 2013) ("Plaintiff, who carries the burden through Step 4, has failed to show objective medical evidence that a condition . . . caused more than a minimal effect on her ability to function.").

### vi. Constant Anticoagulation (Coumadin) Therapy Unnecessary

The ALJ found Dr. Russo's June 5, 2019, To Whom It May Concern note questionable. Dr. Russo's medical records validate the ALJ's skepticism. The ALJ acknowledged, (Tr. 29), Dr. Russo's June 5, 2019, To Whom It May Concern note, requested by Plaintiff, that Plaintiff cannot have back injections or surgery due to the risk of stroke while off Coumadin. (Tr. 2110). But the ALJ found this note questionable because Plaintiff was off Coumadin while undergoing gastric sleeve surgery for obesity. (Tr. 29). Plaintiff admitted being off Coumadin for this surgery at the administrative hearing. (Tr. 49). Also, January 4 & 20, 2017, records from Dr. Russo indicated that Plaintiff denied any bleeding issues while being on Coumadin (Tr. 339, 346). In fact, at the January 20, 2017, visit, Dr. Russo indicated he would probably stop Coumadin at the next visit. (Tr. 353). The ALJ noted that even without back surgery no greater RFC limitation would be warranted. (Tr. 29).

But the medical records indicate Plaintiff kept taking Coumadin. The medical records also indicate Plaintiff asked for that note because of his ALJ hearing. On May 28, 2019, Registered Nurse Angela Payne of Dr. Russo's office noted she "received a call from Mr. Satterthwaite stating that he has a hearing for disability benefits in September and he asks for documentation stating that it is not advisable to have back injections or surgery at this time due

to being on Coumadin and risk for bleeding with injections and stroke when off of coumadin." (Tr. 2145).

It is the claimant's burden to establish how any medically determinable impairment negatively affects functioning. See 20 C.F.R. §§ 404.1512(c) & 416.912(c); see, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The Court finds that Plaintiff has failed to meet that burden.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 19) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 21) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: February 15, 2022

Max O. Cogburn Jr.
United States District Judge